CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 6 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| MELVIN RAYNARD JONES, ) | |
| ) | Civil Action No.:7:07cv00564 |
| Appellant, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| NORTH CAROLINA DEP'T OF CHILD ) | |
| SUPPORT ENFORCEMENT ) | By: Samuel G. Wilson |
| THROUGH VA DIVISION OF CHILD ) | United States District Judge |
| SUPPORT ENFORCEMENT, ) | |
| ) | |
| Appellee. ) | |

This is an appeal by pro se appellant Melvin Raynard Jones from the bankruptcy court's refusal on futility grounds to reopen Jones' bankruptcy case to permit Jones to file an adversary proceeding for injunctive relief. The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. This court concludes the reopening of his case is futile because of an intervening determination and judgment by a state court having concurrent jurisdiction that Jones' debt is a nondischargeable child support obligation. Accordingly, this court affirms.

I.

Jones filed a Chapter 7 Petition on July 14, 2005. He listed the North Carolina Department of Child Support Enforcement ("North Carolina") as a creditor. On October 11, 2005, he filed a complaint he styled "Motion to Determine Validity of Debt." Jones (1) alleged that North Carolina had not maintained an accurate record of his payment history and had improperly calculated his arrearage to be $36,747.96; (2) noted that Virginia's Department of Social Services, Division of Child Support Enforcement ("Virginia") had endeavored to register the North Carolina support order; and (3) requested the bankruptcy court to declare the alleged

arrearage to be "fraudulent" and to enjoin future collection efforts. North Carolina moved to dismiss Jones' complaint, arguing that the court should abstain and alternatively that the Rooker-Feldman doctrine and res judicata precluded the challenge. Jones reiterated his claim that the North Carolina courts had not accurately recorded his payment history, and he also claimed that he had not been given notice and an opportunity to be heard in the North Carolina proceedings. (Hr'g Tr. 11, Feb. 14, 2006.)

On May 12, 2006, the bankruptcy court discharged Jones from all debts except "debts which are nondischargeable pursuant to section 523 (a) (1), (3), (5) [*domestic support obligations*], (7), (8) and (9) of the Bankruptcy Code." The order of discharge further provides that it does "not affect any pending complaints to have a Debt declared nondischargeable pursuant to Section 523(a)(2), (4), (6) and (15) of the Bankruptcy Code, nor does it prohibit filing of a complaint Under Section 523(a)(1), (3), (5) [*domestic support obligations*], (7), (8) and (9) of the Bankruptcy Code."

In the adversary proceeding, the bankruptcy court heard no testimony on the question raised in Jones' complaint concerning the validity of Jones' support obligation, although the court received exhibits from the parties. Noting that "the North Carolina judgment was duly registered in Virginia" and applying Virginia's general principles of res judicata, the court dismissed Jones' complaint. The court denied Jones' request for rehearing, and Jones appealed. On appeal this court held that Jones' "Motion to Determine Validity of Debt" that commenced the adversary proceeding was not an appropriate or adequate vehicle to resolve the overarching issue that should have been before the bankruptcy court for resolution – whether the debt was dischargeable. The court concluded that whatever the outcome of the appeal, Jones remained

free, "at any time . . . without payment of an additional filing fee" to file a complaint in the bankruptcy court to determine the dischargeability of his debt. See Fed. R. Bankr. P. 4007(b) (West 2008). Because that determination would have subsumed the issue decided by the bankruptcy court, a decision on the merits in that appeal would have been a piecemeal appellate disposition of what was, in practical consequence, but a single controversy. Consequently, in February 2007, the court vacated the judgment of the bankruptcy court and dismissed Jones' appeal. This left Jones free to file an adversary proceeding in the bankruptcy court to determine the dischargeability of his debt. Jones, however, did not immediately file an adversary proceeding in the bankruptcy court.

In the meantime, claiming that Jones was delinquent in child support in the amount of $36,748.96, Virginia commenced enforcement proceedings under Virginia Code Ann. § 46.2-320 B, which provides for the suspension or non-renewal of the driver's license of an obligor who is willfully delinquent in the payment of child support by 90 days or more or in an amount of $5,000 or more. In accordance with that provision, Jones requested a hearing in the Juvenile and Domestic Relations Court for the City of Roanoke. There, he argued that he had listed the debt in his Chapter 7 Bankruptcy case, that no one had contested the debt's dischargeability, and that it, therefore, had been discharged. The court rejected his argument and suspended Jones's driver's license on May 7, 2007. Jones did not appeal the court's determination that he was willfully delinquent in child support but instead, on May 18, 2007, moved to reopen his bankruptcy case, in his words, "to file an action to enforce an existing injunction created by [U.S.C. § 524(a)(2)]." The bankruptcy court noted that Jones could have instituted the proceeding before litigating in the state court proceeding the debt's dischargeability, but having

3

litigated that issue to final judgment in the state court, which has concurrent jurisdiction to determine dischargeability, res judicata would bar the bankruptcy court from redetermining the matter. Therefore, it concluded that it would be futile to re-open Jones' Chapter 7 proceeding and, accordingly, denied Jones' motion to reopen.

## II.

Jones calls his debt a "consumer judgment debt" and argues that because he gave North Carolina notice of his Chapter 7 bankruptcy filing and it failed to object, the debt is discharged. According to Jones, it follows that the proceedings against him in the Juvenile and Domestic Relations Court were "willful violations" of the Bankruptcy Code. Jones' argument is fundamentally flawed. First, the bankruptcy court's order of discharge specifically excepted debts which are nondischargeable pursuant to § 523(a)(5) – domestic support obligations. Second, Jones' debt is not a consumer debt but rather, as has been found by a court having concurrent jurisdiction to resolve the matter, an undischarged domestic support obligation.[1]

State courts have concurrent jurisdiction with the bankruptcy courts to determine whether or not a debt is non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5). See Eden v. Chapski, 405 F.3d 582, 586 (7th Cir. 2005). The Juvenile and Domestic Relations Court for the City of Roanoke was squarely presented with the question of whether the delinquent payments

---

[1] Although this court uses the language "domestic support obligation," it recognizes that Congress first began using that exact language under the 2005 Amendments to § 523(a)(5). "The 2005 Amendments include reducing section 523(a)(5) simply to an exception 'for a domestic support obligation,' a change that was effective for bankruptcy cases filed on or after the effective date of October 17, 2005. This abbreviated language is dependent upon the new definition for 'domestic support obligation' found in new §101(14A)." Norton Bankruptcy Law and Practice 3d, §175: 54. Jones filed his Chapter 7 petition on July 14, 2005. Therefore, the earlier version of § 523(a)(5) controls.

4

were child support and, therefore, nondischargeable. As Jones' own filings in this court show, that court rejected his claim that the debt had been discharged, necessarily finding under Virginia Code Ann. § 46.2-320 B that the debt was for delinquent child support and nondischargeable pursuant to § 523(a)(5). Accordingly, this court agrees with the bankruptcy court that principles of res judicata would have barred Jones from relitigating the matter. It follows that it would have been futile for the bankruptcy court to have reopened Jones' case to permit him to file an adversary proceeding, and this court is constrained to affirm.

### III.

For the reasons stated the decision of the bankruptcy court is affirmed.

**ENTER:** This February 26, 2008.

_____
UNITED STATES DISTRICT JUDGE